# EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement") is made as of the date set forth below by and between KMOS, INCORPORATED., a Delaware corporation ("Employer"), and GARRY HARE, an individual ("Employee"). This agreement in its entirety is contingent on KMOS, Inc. securing a minimum of $1,000,000 in funding for the operation of the Company.

1. **Employment.** Employer hereby employs Employee, and Employee accepts such employment, upon the terms and conditions set forth in this Agreement.

2. **Position and Services**

   (a) <u>Duties</u>. Employee will initially occupy the position of President and Chief Executive Officer (CEO). Employee shall initially be responsible for overall management of the Company and such other related and consistent duties as may reasonably be required by Employer's Board of Directors. In addition, in co-operation with the Company's Board of Directors, Employee will use his best efforts to secure investment and funding as required for building the Company.

   (b) <u>Best Efforts</u>. During the Employment Period, Employee will devote his best efforts and attention to the performance of his duties and to the business affairs of the Employer, except for vacation periods and reasonable periods of illness or other incapacities as permitted by employer's general employment policies. Employee may speak at industry conferences and may serve (at his own expense for travel, etc.) on corporate and advisory boards of entities that do not directly compete with Employer.

   (c) <u>Reporting Relationship</u>. Employee shall report directly to the Chairman of Employer's Board of Directors.

   (d) <u>Location</u>. Employee shall establish Employer's California office within 20 miles of San Rafael, California.

3. **Term.** Unless earlier terminated in accordance with the provisions of Section 6, this Agreement shall remain in effect until the fourth anniversary of the date hereof. All references to a "year" of this Agreement shall refer a year beginning on the month and date of original execution.

4. **Compensation & Benefits**

   (a) <u>Salary</u>. During the initial year, Employer shall pay to Employee, on a monthly basis unless deemed by the employer to be more frequent, a base salary at the annual rate of $300,000, less applicable legal deductions, payable in accordance with the regular payroll practices of the Company. Unless the parties otherwise agree, such base salary shall be increased by a minimum of 5.00 % per annum beginning with the first month following each year of service.

   (b) <u>Participation in Benefit Plans</u>. During the term, Employee shall be entitled to participate in any stock option, profit sharing, retirement, group insurance, hospitalization, medical, dental, health and accident, disability or similar plan or program of Employer now existing or established in the future. Whether or not such benefit is included in a company-wide plan or program, Employee shall be afforded full medial coverage for himself, his spouse, and dependants younger than eighteen years of age.

1

(c) <u>Vacation</u>.  Employee shall be entitled to a period of annual vacation time equal to that provided to employees of equal position by Employer's policies regarding vacation time, but in no event less than (1) the period running from Christmas Day through New Year's Day, plus (ii) two weeks per year.

(d) <u>Employee Initial Stock and Ownership</u>.

(i) Employer hereby grants to Employee 1,750,000 shares of KMOS, Incorporated Common Stock, with a par value of $.0001 per share.

(ii) If (but without any obligation to do so) Employer proposes to register any of its common stock under the Securities Exchange Act of 1933, as amended, it shall promptly give Employee written notice of such proposed registration on a timely basis permitting Employee to exercise all or any portion of its options in time to acquire shares which would be included under such registration, and Employer shall then cause to be registered under the Act all of the Employee-owned shares which Employee has requested to be registered.

(e) <u>Cash Bonus Program</u>. Employee shall be eligible for a cash bonus determined according to the following formula: cash bonus of 2% of the growth in gross revenue calculated annually and based on the anniversary date of this agreement. During Employee's employment, Employer and Employee shall, upon mutual agreement, add further clarity and detail regarding the revenues and other benefits to Employer that are applicable to the calculation of Employee's cash bonus.

5. **Indemnification of Employee.**  Employer agrees to indemnify Employee, and to hold him harmless, against any liability or expense, and against the cost (using counsel approved by Employee) of defending against any such claims, arising out of or otherwise related to any acts or omissions of Employer, its officers, directors, employees or agents which occurred (or, in the case of an omission, which failed to occur) prior to the effective date of this Agreement.

6. **Termination.**

(a) <u>Termination Without Cause</u>.  In the event Employee's employment is terminated without cause he shall be entitled to a continuation of the salary and benefits that Employee would otherwise have been entitled to had he remained employed for the whole of his employment term, as well as immediate vesting of any bonus for which he would have otherwise been eligible under the cash bonus program. All salary and bonuses payable under this section shall be paid at the same time and basis as Employer pays its payroll in general.

(b) <u>Termination by Employer With Cause</u>.

(i) Employer may terminate Employee's employment with Employer at any time for cause, immediately upon notice to Employee of the circumstances leading to such termination for cause; provided, however, that if the stated grounds for such termination are susceptible of cure, Employee shall be allowed a reasonable period (not to exceed 60 days) to effect such a cure, and if such cure is successful Employer shall not proceed with termination of Employee's employment without such termination being deemed without cause.

(ii) For the purpose of Sections 5(a) and 5(b) "cause" shall mean: (A) habitual neglect or insubordination (defined as a refusal to execute or carry out directions from the BoD); (B) conviction of any felony or crime involving moral turpitude; (C) willful breach of Employee's duties to Employer; or (D) conduct by Employee, which in the good faith, reasonable determination of the BoD of Employer demonstrates gross unfitness to perform the duties set forth in Section 2(a) above.

2

(c) Termination by Employee For Good Reason

(i) Employee may terminate his employment with Employer at any time for Good Reason. In the event Employee's employment is terminated by Employee for Good Reason, Employee shall be entitled to the same severance compensation as is provided in Section 5(a) above.

(ii) For the purpose of this Section 5(c), "Good Reason" shall mean: (a) a material change in Employee's roles, responsibilities or reporting relationship without Employee's consent; or (b) a relocation of Employee's principal place of business more than 20 miles from San Rafael, California without Employee's consent or (c) material failure of Employer to provide Employee his compensation and benefits in accordance with the terms of this Agreement, which failure is not cured within fifteen (15) days after written notice thereof by Employee to Employee.

7. **Confidentiality and Non-Solicitation**  Employee agrees to be bound by the provisions of the Confidentiality and Non-Solicitation Agreement which is Attachment A hereto.

8. **Resolution of Disputes**

(a) Arbitration.  In the event of a dispute hereunder which the parties are unable themselves to resolve, either party may submit such dispute to binding arbitration before a single arbitrator at the office of Judicial Arbitration and Mediations Services (JAMS) in San Francisco, California. The award issued in such arbitration proceeding shall be enforceable in any court of competent jurisdiction.

(b) Attorney's Fees.  The prevailing party in such an arbitration or judicial enforcement proceeding shall be awarded its costs thereof, including reasonable attorney's fees.

(c) Governing Law. This Agreement and any dispute arising hereunder shall be interpreted and enforced under the laws of the State of California.

Dated: October 6, 2003

KMOS INCORPORATED, Employer

By: _____

Print Name: PENTTI KOURI

Title: CHAIRMAN

_____
GARRY HARE, Employee

3