UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
AMIGA, INC.,

                      Plaintiff,                      05CV8986 (DAB)

      -against-

GARRY HARE,

                      Defendant.
-------------------------------------------------------------------X

Defendant's Memorandum of Law

This memorandum of law is submitted in support of Defendant's motion, as follows:

(1)  Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, dismissing the action for lack of subject matter jurisdiction;

(2)  Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, dismissing the action for lack of personal jurisdiction;

(3)  Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, dismissing the action for lack of proper venue, or, in the alternative; and

(4)  Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and 9 USC § 4, dismissing the action on the grounds that the controversy between the parties is subject to an arbitration agreement or compelling Plaintiff to arbitrate.

Statement

In order to avoid repetition, the Court is respectfully referred to the Declaration of Garry Hare, dated November 10, 2005, submitted simultaneously herewith, for the facts of this matter.

Point I

Diversity of Citizenship Does Not
Exist Between the Parties.

Since it is acknowledged that Defendant is a citizen of the State of California, Plaintiff's basis for diversity jurisdiction in this matter rests upon New York State being the principal place of business of the Plaintiff corporation, which is Plaintiff's burden to prove. Tosco Corporation v. Communities for a Better Environment, (9th Cir. 2001).

There are two tests utilized to determine the principal place of business of a corporation, the "place of operations test" and the "nerve center test." Tosco, supra, 236 F.3d at 500; R. G. Barry Corporation v. Mushroom Makers, Incorporated, 612 F.2d 651, 654-655 (2nd Cir. 1979).

> When, however, corporate operations are centralized, courts have tended to de-emphasize the concentration on the corporate "nerve center" and to focus instead upon the state in which a corporation has its most extensive contacts with, or greatest impact on, the general public. For example, in *Inland Rubber Corp. v. Triple A Tire Service, Inc., 220 F. Supp. 490 (S.D.N.Y.1963),* a corporation chartered and headquartered in Ohio was found also to be a citizen of New York, because its principal operations were all conducted there. The corporation served as a sales subsidiary of a manufacturing firm based in Ohio. Its corporate officers were all located in Ohio, where they also managed the parent's other subsidiaries. Although Inland's activities were directed from Ohio, most of its employees and two-thirds of its sales were centered in New York. In addition, the New York office prepared the company's financial statements and formulated its credit and advertising policies. *Id. at 491-92.*

R. G. Barry, supra, 612 F.2d at 655.

As stated in the Hare Declaration (para. 7), the business of Plaintiff was always conducted from 225 Foster Avenue, Kentfield, California; all sales and product records and most business

records, including contracts, were maintained at that address; all contracts with customers contained that address as the address of the Plaintiff; the President and CEO of Plaintiff operated out of that address; salespeople of the Plaintiff reported to the President and CEO at that address; the majority of all telephone calls went to Plaintiff's phone number at that address in California, most of the rest of the telephone calls going to salespeople in California and Washington; contracts, non-disclosure agreements, software development agreements and other documents that were transmitted to or from the Plaintiff went through the Plaintiff's fax number at that address in California or through e-mail at a computer located at that address; all management, contracting, sales and marketing and communications with potential employees, partners, software developers and other third parties was through this address; and all third-party royalty checks and statements were sent to this address. Furthermore, when Defendant resigned in August 2005, he delivered the books and records, including contracts of Plaintiff, to Gregory Sigel, the Vice President of Sales and Marketing, at his California address, located at 57 Manor Drive, Kentfield, California 94904.

On the other hand, the address of 167 Madison Avenue, Suite 301, New York, New York, listed as the Plaintiff's principal place of business in the Complaint, which is the office of an architect, is merely a mail drop where Plaintiff's independent accountant, not an employee, maintains his personal office (Hare Declaration, para. 7). If fact, the independent accountant, John Grzymala, only conducts his accounting business there, where he does the bookkeeping for a number of companies, besides the Plaintiff (Hare Declaration, para. 7). No employees of Plaintiff have an office at 167 Madison Avenue (Hare Declaration, para. 7). Further, the Plaintiff has no employees located within New York State (Hare Declaration, para. 7). The only connection the

Plaintiff has with New York State is that the Chairman and majority stockholder, Pentti Kouri, lives in New York State (Hare Declaration, para. 7).

Accordingly, it is respectfully submitted that according to the place of operations test, the principal place of business of Plaintiff is the State of California,

Point II

The Court Lacks Personal Jurisdiction
over the Defendant.

> Plaintiffs have the burden of establishing, by a preponderance of the evidence, that personal jurisdiction lies over Defendants. [citation omitted] In a diversity action, the Court must determine jurisdiction according to the law of the state in which it sits. [citation omitted].

Walker v. Smith, 257 F. Supp. 2d 691, 693 (S.D.N.Y. 2003) (Sweet, J.).

Accordingly, since Defendant has not been shown to do business in New York, is not domiciled in New York, was not physically present at the time of service and did not consent to service (Hare Declaration, paras. 7-8), jurisdiction is proper only if New York's long-arm statute, C.P.L.R. § 302, confers specific jurisdiction.  Id. at 694.

> Jurisdiction is proper under *Section 302(a)(1)* only if it can be established that Defendants purposefully availed themselves of the privilege of conducting activities in New York. *Glass v. Harris, 687 F. Supp. 906, 908 (S.D.N.Y. 1988).* Federal due process requires that, for a defendant to be subject to personal jurisdiction, her activities must constitute purposeful efforts to invoke the benefits and protection of New York law. *Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958).*

Id. at 694.

Since the business of Plaintiff took place in California, and Defendant conducted no business in New York, save for a few meetings in the last couple of years (Hare Declaration, para. 7), it is submitted that Defendant, even on a cumulative basis, did not have the significant contacts in New York which would confer personal jurisdiction upon him. <u>George Reiner and Co., Inc. v. Schwartz</u>, 41 N.Y.2d 648; 363 N.E.2d 551; 394 N.Y.S.2d 844 (1977); also see, <u>Aurea Jewelry Creations, Inc., v. Lissona</u>, 344 F. Supp. 179, (S.D.N.Y. 1972) (Edelstein, J.). This is especially true since the principal place of business of Plaintiff, at all relevant times, was in California and Plaintiff had no more than a mail drop in New York and had no employees in New York (Supra, Point I). Further, even the Defendant's subject Employment Agreement with Plaintiff specifically requires that Defendant "shall establish Employer's California office within 20 miles of San Rafael, California (Hare Declaration, Exhibit A, para. 2(d))", as well as requires arbitration in San Francisco, California (Hare Declaration, Exhibit A, para. 8(a)) and provides that the Employment shall be governed by California law.

Accordingly, it is submitted that Defendant did not purposefully avail himself of the privilege or invoke the benefits of doing business in the State of New York sufficient to confer personal jurisdiction.

Point III

<u>Venue Is Improper in this District.</u>

28 USC 1391 (a), in pertinent part, provides that a civil action founded on diversity of citizenship may

> "be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part

5

of the events or omissions giving rise to the claim occurred ... "

It is clear that venue is proper in Northern California because the Defendant is the sole defendant in this action and resides in Northern California. Conversely, the Southern District of New York does not represent a judicial district in which a substantial part of the events giving rise to the claim occurred. In fact, none of the claims for relief (Hare Declaration, Exhibit D, Complaint), are alleged to have related to actions or omissions occurring in New York.

Accordingly, it is submitted that the action should be dismissed because the Southern District of New York represents an improper venue.

In addition, according to the Employment Agreement, not only is arbitration to take place in California, but the Employment Agreement and any dispute arising hereunder shall be interpreted and enforced under the laws of the State of California (Hare Declaration, Exhibit A, para 8(c)). Further, Defendant worked out of California; the principal place of business of Plaintiff is in California; Defendant was to be paid in California, and all witnesses, except Mr. Kouri, are located on the West Coast, either in California or Washington (Hare Declaration, paras. 7 and 9). Therefore, it is respectfully submitted that even if venue were to be technically proper in this judicial district, the Court should transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Point IV

The Controversy between the Parties Is
<u>Subject to Arbitration.</u>

There can be no question that the Employment Agreement contains an arbitration clause

(Hare Declaration, Exhibit A, para. 8(a)) and that the arbitration clause extends to "any dispute hereunder." Certainly, "any dispute hereunder" covers Defendant's duties (Hare Declaration, Exhibit A, para. 2(a)), Defendant's best efforts (Hare Declaration, Exhibit a, para. 2(b), " compensation and benefits (Hare Declaration, Exhibit A, para. 4) and confidentiality and non-solicitation (Hare Declaration, Exhibit A, para. 7). Hence, the Employment Agreement covers everything alleged in the Complaint, as well as Defendant's general employment and duties and obligations as an officer of Plaintiff, as well as attachment A to the Employment Agreement, the separate Confidentiality and Nonsolicitation Agreement. Accordingly, there can be no question that the arbitration clause covers the instant controversy between the parties.

In addition, Plaintiff's belated claim that Plaintiff's entry into the Employment Agreement was fraudulently induced is of no avail. At least since the advent of the Federal Arbitration Act, the issue of fraudulent inducement of a contract is an arbitrable matter. In re <u>Tyco International, Ltd., Multidistrict Litigation</u>, 2003 DNH 228; 2003 U.S. Dist. LEXIS 23490 (D.N.H. 2003). Further, even though the Complaint implies that the Employment Agreement was fraudulently induced, there is no claim, whatsoever, that the arbitration clause of the Employment Agreement was fraudulently induced. Most importantly, the allegation of fraudulent inducement is "bare bones," without any specifics and could not survive a motion to dismiss. There are simply no factual averments of fraudulent inducement. It is submitted that a mere outcry of fraudulent inducement is insufficient without facts. Finally, Plaintiff continually refers to the Employment Agreement as a "contingent" agreement, contingent on Plaintiff, "through Hare's direct connections and efforts (Hare Declaration, Exhibit D, Complaint, para. 11) raising $1,000,000. However, Plaintiff's language only implies that $1,000,000 was not raised, and Plaintiff carefully

7

avoids stating that $1,000,000 was not raised. That is because $1,000,000 was, in fact, raised, raised from the completion of a private placement on or about May 10, 2004 (Hare Declaration, para. 10). As a result of the $1,000,000 raise, Defendant was paid full salary back to the original October 6, 2003 date of employment (Hare Declaration, para. 10). What is more disturbing is that Plaintiff purposely misstates the Employment Agreement and, consequently tries to materially mislead the Court by averring in the Complaint that the Employment Agreement required Defendant, through his "direct connections and efforts (Hare Declaration, Exhibit D, para. 11), " to raise this money. Nowhere within the four corners of the Employment Agreement can Plaintiff point to such language because it simply is not there. In fact, the initial paragraph of the Employment Agreement (Hare Declaration, Exhibit A) distinctly makes it the obligation of Plaintiff, not Defendant. Additionally, on November 4, 2005, JAMS, in San Francisco, initiated the subject arbitration and has already circulated a list of potential arbitrators (Hare Declaration, Exhibit F).

Accordingly, it is respectfully submitted that this action should be dismissed because the disputes should be arbitrated according to the Employment Agreement, or, in the alternative, that Plaintiff be compelled to arbitrate this matter in accordance with the Employment Agreement.

## Conclusion

By reason of the foregoing, it is respectfully submitted that Defendant's motion should be granted in its entirety and that the Court should grant such other and further relief as to it may seem just and proper.

                                                  Respectfully submitted,

                                                  Law Offices of Edward C. Kramer, P.C.

                                                  By:_____/s_____
                                                       Edward C. Kramer (EK8411)
                                                        (a principal of the firm)
                                                Attorneys for Defendant
                                                Office and Post Office Address
                                                488 Madison Avenue, Suite 1100
                                                New York, New York  10022
                                                (212) 490-1616

Edward C. Kramer
    Of Counsel