UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
AMIGA, INC.,

                                Plaintiff,                      05CV8986 (DAB)

              -against-                        Reply Declaration

GARRY HARE,

                                Defendant.
--------------------------------------------------------------------X

     Garry Hare, hereby declares the truth of the following under the penalties of perjury.

     1. I am the Defendant in the above-entitled action and am fully familiar with the facts stated in this declaration and know them to be true to my personal knowledge.

     2. This declaration is submitted in rely to the declaration of Pennti Kouri, dated December __, 2005, which was submitted on behalf of Plaintiff in opposition to Defendant's Rule 12(b) motion (hereinafter referred to as the "Kouri Declaration)." This declaration is also submitted in opposition to Plaintiff's cross-motion to stay arbitration.

<u>Two Bites at the Apple</u>

     3. Plaintiff is seeking two bites at the apple. Plaintiff has petitioned this Court to rule that the financing contingency, contrary to its plain words, means that I had to raise the $1,000,000 funding and that if the company raised the money, the Employment Agreement was not in effect. Plaintiff has also raised this exact issue in the JAMS arbitration in San Francisco. In the unlikely event that JAMS rules in Plaintiff's favor, Plaintiff will claim victory. However, should JAMS rule against Plaintiff, Plaintiff will claim that the decision does not count and that this Court must decide the issue. Annexed hereto as Exhibit A is a copy of Plaintiff's Memorandum of Law to Stay or, Alternatively, Dismiss Arbitration. Of course, Plaintiff will point to footnote 1 on page 1,

which is a self serving, inconsistent plea, that Plaintiff's motion should not serve as a consent to JAMS jurisdiction in the event that JAMS decides against Plaintiff. If JAMS ever decided in favor of Plaintiff, is there anyone in this universe who would believe that Plaintiff would state that the decision did not count and that only this Court could decide? Accordingly, it is respectfully submitted that Plaintiff is litigating the issue of arbitrability before JAMS, which makes the cross-motion, as well as the instant action, moot. Essentially, Plaintiff, by its very own action, has consented to JAMS determination, whatever that may be.

Interpretation of the Employment Agreement
<u>verses Determining that the Contingency Has Been Met.</u>

  4. There is a difference between determining if a stated contingency has been met and interpreting what that contingency means. Whereas, determining if a stated contingency has been met and whether or not there is an agreement, is something that might be considered in the Court's purview, interpreting the meaning of the contingency is clearly within the purview of the subject arbitration clause. The contingency language is as follows: "(T)his agreement in its entirety is contingent on KMOS, Inc. securing a minimum of $1,000,000 in funding for the operation of the Company." Plaintiff claims that this language means that the agreement is contingent on Defendant securing the funding and not Plaintiff (KMOS, Inc. is the former name of Plaintiff). Clearly, the interpretation of this clause is subject to arbitration. Whether or not one party or the other actually secured the funding may be subject to a Court's determination. However, where, as here, both sides admit that Plaintiff secured the funding in the amount of $1,000,000, there is absolutely no issue for the Court to determine.

Plaintiff Is Blatantly Misstating the Facts to the Extent
<u>that the Kouri Declaration Constitutes a Fraud on the Court.</u>

5. By reviewing the documentary evidence, it is absolutely certain that Mr. Kouri and Plaintiff understood that the obligation in the Employment Agreement was on Plaintiff, not Defendant, to raise the funds, and once Plaintiff raised the funds, immediately implemented the Employment Agreement and complied with its specific terms.

6. Annexed hereto as B is a copy of a subscription agreement dated May 10, 2004 for the purchase by Tapul S.A. of 421,052 common shares of Plaintiff at a purchase price of $1,000,000. On or about the same date, Mr. Kouri sent me a copy of this subscription agreement clearing the Plaintiff's obligation on the contingency funding.  By May 17, 2004, upon the clearing of funds from Tapul S.A., Plaintiff wired me the sum of $225,000, representing my back salary to the date of the Employment Agreement.  A copy of my confirming Charles Schwab account statement from 05/01/2004 to 06/01/2004, showing the receipt of the $225,000 on May 17, 2004, is annexed hereto as Exhibit C.  From then on I received my regular salary of $25,000 a month according to the Employment Agreement (para. 4(a).  A sample earnings statement from Plaintiff for the period 8/01/2004 to 8/31/2004 is annexed hereto as Exhibit D.  Annexed hereto as Exhibit E is a copy of my earnings statement for the period 3/02/2005 to 4/01/2005, which reflects a 5% increase in my salary according to paragraph 4(a) of the Employment Agreement.  I first became involved in fund raising in December 2004, and only tangentially, when the Board of Directors of Plaintiff authorized me, as CEO, to engage Inveraray Partners as investment bankers for the Plaintiff (see copy of minutes of December 10, 2004 board meeting annexed hereto as Exhibit F). As is evident from Exhibit F, I was a board member and the CEO of Plaintiff.  In May and June 2005, Plaintiff had stopped paying salaries because of its financial problems and on June 29, 2005,

Mr. Kouri acknowledged that Plaintiff owed me two months' salary equaling $57,240, as well as T&E of $70,000 (see Exhibit G).  On July 28, 2005, Mr. Kouri sent me an e-mail (copy annexed hereto as Exhibit H) acknowledging that I was a major shareholder (see Employment Agreement para. 4(d) and clearly indicating it was the responsibility of the Plaintiff and not me to raise funds. <u>In fact, there was no communication ever referring to any obligation I had to raise funds and Plaintiff can point to no such document.</u>  Further, in several e-mails and correspondences I specifically referred to my Employment Agreement (see Exhibit I), without any objection or protest on the part of Mr. Kouri.  On August 4, 2005, I resigned from Plaintiff pursuant to the Employment Agreement due to Plaintiff's breach in failing to pay me salary for four months (see Exhibit I).  <u>Finally, in Exhibit J annexed hereto, Mr. Kouri admits in an August 4, 2005 e-mail to me that there was an "Employment Agreement," as shown in the "Subject" of the e-mail.  Further, in the same e-mail, he threatens termination for cause, clearly under the Employment Agreement.</u>  In all, the funding contingency was the responsibility of Plaintiff, which Plaintiff actually fulfilled; Plaintiff accepted my employment pursuant to the Employment Agreement and remunerated me pursuant to the Employment Agreement, in salary as well as acknowledged my stock ownership interest; and I served as CEO according to the Employment Agreement.  There is not one document that exists to the contrary.  Accordingly, it is clear that Mr. Kouri has lied to this Court, fabricated an absurd argument for purposes of delay, caused me to incur additional legal fees and has wasted the Court's time.

     7. In order not fall into Plaintiff's trap of delay and stall, I am waiving my personal jurisdiction defense to eliminate the necessity of a hearing and am withdrawing my motion as to subject matter jurisdiction for the same reason.  I also withdraw that portion of my motion

respecting a change of venue at this time, without prejudice to renew at a later date to the extent permitted by law. This will enable the Court to rule directly on that part of my motion to dismiss the action on the grounds that this matter is subject to an arbitration agreement, as well as on Plaintiff's cross-motion. Again, it is noted that Plaintiff has already submitted the issues herein before the JAMS arbitration in San Francisco and therefore, it is respectfully submitted, waives and is estopped from litigating these issues in this proceeding.

8. Because of the fraud perpetrated by Plaintiff on the Court and on me with its bad faith, frivolous, dishonest opposition, geared only for delay and to cost me additional attorneys' fees, I ask that appropriate sanctions be imposed upon Plaintiff as well.

WHEREFORE, Your declarant respectfully submits that the Court should grant Defendant's motion in its entirety and such other and further relief as to it may seem just and proper.

Dated: Kentfield, California
January 30, 2005

_____

Garry Hare