25/2006  22:46  5104500954  GISTICS  PAGE 01

# ReedSmith

Robert H. Bernstein
Direct Phone: 973-621-3206
Email: RBernstein@reedsmith.com

Reed Smith LLP
The Legal Center
One Riverfront Plaza
Newark, NJ 07102-5401
973.621.3200
Fax 973.521.3199

January 20, 2006

RECEIVED
JAN 2 3 2006

**VIA UNITED PARCEL SERVICE**

Honorable Demetrios P. Agretelis
1700 Shattuck Avenue, #326
Berkeley, CA 94709

Re:  Hare, Garry vs. Amiga, Inc., et al.
     Reference No. 1100046108

Dear Judge Agretelis:

On behalf of Respondents, Amiga, Inc. and Pentti Kouri, I enclose Respondents' Memorandum of Law to Stay or, Alternatively, Dismiss Arbitration.

Also, the briefing schedule issued by Your Honor requires Claimant to submit any opposition papers by January 30. Respondent respectfully requests the opportunity to file a reply to Claimant's opposition no later than February 7.

Thank you for Your Honor's consideration.

Respectfully,

Robert H. Bernstein

RHB/sdb
Enclosure
cc: Bruce W. Blakely, Esq. (w/encl. - via facsimile: (415) 381-4301 and via UPS)
    Cindy L. Cravalho (w/encl. - via facsimile: (925) 938-6732)

LONDON ♦ NEW YORK ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ WASHINGTON, D.C. ♦ PHILADELPHIA ♦ PITTSBURGH ♦ OAKLAND
PRINCETON ♦ FALLS CHURCH ♦ WILMINGTON ♦ NEWARK ♦ MIDLANDS, U.K. ♦ CENTURY CITY ♦ RICHMOND ♦ LEESBURG
reedsmith.com

JAMS ENDDISPUTE MEDIATION

GARRY HARE,

          Claimant,

vs.

AMIGA, INC. and PENTTI KOURI,

          Respondents.

Reference No. *1100046108*

---

**MEMORANDUM OF LAW ON BEHALF OF RESPONDENTS TO STAY OR, ALTERNATIVELY, DISMISS ARBITRATION**

---

REED SMITH LLP
The Legal Center
One Riverfront Plaza – 1st Floor
Newark, New Jersey 07102
Telephone: (973) 621-3200
Facsimile: (973) 621-3199
Attorneys for Respondents
Amiga, Inc. and Pentti Kouri

Of Counsel and On the Brief:
    Robert H. Bernstein, Esq.

On the Brief:
    Stephen D. Bird, Esq.
    Christian R. White, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ............................................................................................................4

    POINT I

    JAMS SHOULD STAY THIS PROCEEDING PENDING THE FEDERAL
    COURT'S RULING ON WHETHER THE CONTINGENT
    AGREEMENT IS VOID ............................................................................................4

        A.    Where a Party Challenges the Underlying Contract Containing
              an Arbitration Clause as Void, a Court (and Not an Arbitrator)
              Must First Decide Whether the Agreement Is In Fact Void ....................4

              1.    The District Court Must First Determine the Contingent's
                     Agreement's Validity Because Amiga Claims the
                     Contingent Agreement Is "Void"..................................................5

              2.    Amiga's Challenge that Claimant's Failure to Satisfy the
                     Condition Precedent Is a Claim that the Underlying
                     Contingent Agreement is Void .....................................................7

        B.    Claimant's Attempted Reliance on the Federal Arbitration Act
              Further Supports Staying the Arbitration...............................................11

        C.    Judicial/Arbitral Efficiency and Economy Warrant Staying
              Arbitration...............................................................................................13

    POINT II

    EVEN IF JAMS COULD DECIDE THE ARBITRABILITY ISSUE (AND
    IT CANNOT), ARBITRATION IS NONETHELESS IMPROPER BECAUSE
    CLAIMANT NEVER SATISFIED THE $1 MILLION CONDITION
    PRECEDENT ..........................................................................................................13

CONCLUSION........................................................................................................15

i

## PRELIMINARY STATEMENT[1]

Respondents, Amiga, Inc. ("Amiga" or "the Company") and the Chairman of its Board of Directors, Pentti Kouri, submit this memorandum of law in support of their position that JAMS is not authorized to proceed with this arbitration.[2] The sole authority for JAMS to arbitrate the instant claims is the agreement upon which Claimant, Gary Hare, relies. As Amiga contends the agreement is void and has previously petitioned the United States District Court for the Southern District of New York for a declaration on this issue, JAMS has no authority to proceed with this arbitration. Indeed, settled law, including that in the Ninth Circuit, instructs: "[A] party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision." Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 11390-41 (9th Cir. 1991). Accordingly, JAMS should stay this matter pending the forthcoming ruling by the district court.[3]

By way of background, in September 2003, Amiga engaged in negotiations concerning Claimant joining Amiga as Chief Executive Officer. Amiga entered these negotiations with the intent of forming a strategic "partnership" with Claimant pursuant to which Claimant was required to, among other things, introduce the Company to financing and capital markets and

---

[1] Nothing herein shall be deemed to constitute, or be interpreted as Respondents' consent to arbitration. To the contrary, Respondents maintain that JAMS does not have jurisdiction to hear this dispute and that the matter should not proceed.

[2] Though not addressed in this memorandum, as Your Honor only invited arguments respecting whether this arbitration should proceed, Mr. Kouri also objects to this arbitration against him in his individual capacity because he is not a party to the agreement upon which Claimant bases this arbitration. See Benasra v. Marciano, 92 Cal. App. 4th 987 (Cal. Ct. App. 2001) (reaffirming that "a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration" and holding that corporate officer who signed agreements with arbitration clauses could not be compelled to arbitrate claims against him because he was "not a party to the ... agreements[;] he unambiguously signed both agreements as a corporate officer and only as a corporate officer, not in his individual capacity.") Accordingly, Mr. Kouri reserves his right to raise this defense.

[3] By letter dated January 5, 2006, Respondents submitted the parties' federal court pleadings, including Mr. Kouri's declaration, to JAMS. As Respondents refer to the federal court pleadings in this memorandum, the federal pleadings are part of the record before JAMS on this motion.

strategic investors, manage Amiga's operations and employees, and grow the Company generally.

During the negotiations, Claimant deliberately misrepresented that he had extensive connections and intimate relationships with industry leaders and investors in the financial services industry and possessed the ability to secure financing from these alleged contacts. Based upon these numerous and serious misrepresentations, Amiga entered into a contingent employment agreement ("the Contingent Agreement") with Claimant on October 6, 2003. However, before simply agreeing to be bound by an agreement that would provide Claimant with substantial compensation and benefits, Amiga required assurances that Claimant would be able to raise capital for the Company. Accordingly, Claimant's counsel (who prepared the Contingent Agreement) included a provision in the first paragraph of the Agreement making clear that "[t]his agreement in its entirety i] contingent on [the Company] securing a minimum of $1,000,000 in funding for the operation of the Company." (Introductory Section) (emphasis added).

The purpose and intent of this provision was to make the Contingent Agreement conditioned upon Amiga, through Claimant's direct connections and efforts, securing a minimum of $1,000,000 in funding for the operations of Amiga. Put another way, if that precondition did not occur, the parties agreed the Contingent Agreement was unenforceable and neither party was bound. Amiga was not prepared to undertake an obligation of providing Claimant with an extraordinarily generous benefits package (including substantial damage provisions under the Contingent Agreement) and paying him a $300,000 annual salary until Claimant demonstrated that he could in fact raise capital.

The Company never secured a minimum of $1,000,000 in funding for the operations of Amiga through Claimant's direct efforts. Anticipating that Amiga would terminate him because of his misrepresentations and failure to carry out his responsibilities, Hare chose to "jump the

01/25/2006  22:46    5104500954              GISTICS                      PAGE  07

gun" and voluntarily resign on August 4, 2005. While the Company eventually raised $1,000,000 from private investors, none of that money resulted from Claimant's efforts. Consequently, Amiga contends the Contingent Agreement, in its entirety (including the arbitration provision), never took effect.

Amiga filed a federal lawsuit on October 21, 2005 seeking, among other relief, a declaration that the Contingent Agreement is void because Claimant did not satisfy the $1 million condition precedent to enforce that document. In response, Claimant filed a motion to dismiss Amiga's Complaint, arguing the district court should compel the parties to arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §3, et seq. (the "FAA"). On December 19, 2005, Amiga filed its opposition to Claimant's motion and cross-moved to dismiss or, alternatively, to stay the instant arbitration proceeding. Claimant's response to Amiga's cross-motion is due January 31, 2006.

As set forth more fully below, JAMS has no authority to hear Claimant's claims. It is well-established that where, as here, a contract containing an arbitration clause is challenged as void, it is the responsibility of a court, not an arbitrator, to first determine whether the underlying contract is in fact void. Consistent with settled law, JAMS therefore must stay this proceeding pending the district court's ruling on Amiga's claim that the Contingent Agreement is void.

In the event, however, JAMS (as opposed to the Court) were to rule on the merits of Amiga's contention that the Contingent Agreement is void without waiting for the Court to first decide the issue —something JAMS should not do— JAMS nonetheless should dismiss this arbitration for the same reasons Amiga advances before the district court, i.e., the Contingent Agreement never took effect because Claimant did not satisfy the $1 million condition precedent.