## ARGUMENT

### POINT I

### JAMS SHOULD STAY THIS PROCEEDING PENDING THE FEDERAL COURT'S RULING ON WHETHER THE CONTINGENT AGREEMENT IS VOID

**A. Where a Party Challenges the Underlying Contract Containing an Arbitration Clause as Void, a Court (and Not an Arbitrator) Must First Decide Whether the Agreement Is in Fact Void**

The central issue here is whether the district court or an arbitrator should decide the validity of the Contingent Agreement. As set forth below, settled law dictates that where a party to a contract containing an arbitration clause claims the agreement never came into effect because of the other party's failure to satisfy a condition precedent to the agreement, a court must determine the threshold issue of whether arbitration should proceed. Consequently, JAMS should stay this proceeding pending the district court's ruling as to whether arbitration is appropriate.

It is well-settled that if the making of an arbitration agreement is placed in issue, a court must first determine whether a valid agreement exists. See Three Valleys, 925 F.2d at 1140-41 (quoting Camping Constr. Co. v. District Council of Iron Workers, Local 378, 915 F.2d 1333, 1340 (9th Cir. 1990)) ("The court must determine whether a contract ever existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting any question to an arbitrator."); Adams v. Suozzi, ___ F.3d ___, No. 04 Civ. 6017, 2005 U.S. App. LEXIS 29016, *18 (2d Cir. Dec. 30, 2005) ("The District Court possessed not only authority, but a duty, to determine whether there ever existed an agreement to arbitrate between the parties.") (attached hereto as Exhibit A); Sphere Drake Ins. Ltd. v. Clarendon National Ins. Co., 263 F.3d 26, 30 (2d Cir. 2001) ("if the making of an arbitration agreement is placed in issue ... the court must set the issue for trial...."). Indeed, "before a party can be required to submit to arbitration, it is entitled to a judicial determination of the threshold question of whether it entered into an

01/25/2006  22:46   5104500954                GISTICS                          PAGE  09

agreement which obliges it to consent to arbitration." PMC, Inc. v. Atomergic Chemetals Corp., 844 F. Supp. 177, 181 (S.D.N.Y. 1994).

An agreement to arbitrate is a matter of contract – "it is a way to resolve those disputes - but only those disputes - that the parties have agreed to submit to arbitration." Underwriters Reinsurance Co. v. Ace American Insurance Co., No. 02 Civ. 08177, 2003 U.S. Dist. LEXIS 24814, *10 (C.D. Cal. Feb. 10, 2003). The existence of a valid agreement to arbitrate is a condition precedent to enforcement, and the lack of such agreement is a valid ground on which a party may refuse to arbitrate. Id. at *13; Ramirez v. Cintas Corp., No. 04 Civ. 00281, 2005 U.S. Dist. LEXIS 9237, *16 (N.D. Cal. Mar. 22, 2005) (federal district courts consider issues relating to the making and performance of the agreement to arbitrate and initially determine whether a valid agreement exists); Wilmot v. McNabb, 269 F. Supp. 2d 1203, 1206 (N.D. Cal. 2003) (district court determines when a party has failed to comply with a valid agreement to arbitrate, prior to directing the parties to proceed to arbitration); see also Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 67 (2d Cir. 2005) (explaining that a party alleging that a contract is void entitled to a trial prior to arbitration); The Canada Life Assurance Co. v. The Guardian Life Ins. Co. of America, 242 F.Supp. 2d 344 (S.D.N.Y. 2003) ("It is well-settled that when the existence of the contract from which the obligation to arbitrate arises is itself called into question, it is the obligation of the court, before a dispute is referred for arbitration, to determine, in the first instance, whether the contract itself is valid"); Daewoo Corp. v. Olsen, No. 87 Civ. 2251, 1989 U.S. Dist. LEXIS 13463 (S.D.N.Y. Nov. 15, 1989) (holding that court must first determine whether the underlying contract exists prior to considering the arbitration provision).

1. The District Court Must First Determine the Contingent Agreement's Validity Because Amiga Claims the Contingent Agreement is "Void"

Amiga claims the underlying agreement between the parties is void. The distinction between a claim that a contract is "void," as opposed to "voidable," is particularly important as the doctrine of severability presumes a valid underlying agreement. The doctrine draws a

distinction between contracts that are asserted to be "void" or non-existent, as is contended here, and those that are merely "voidable," for purposes of evaluating whether the making of an arbitration agreement is in dispute. Three Valleys, 925 F.2d at 1139-41; Adams, 2005 U.S. App. LEXIS 29016, *18 ("'Void' contracts 'produce[] no legal obligation.' A contract is 'void' when, for example, there was no meeting of the minds about essential terms or where there was fraud in the factum. 'Voidable' contracts are subject to rescission, but otherwise create legal obligations." (internal citations omitted); Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 67 (2d Cir. 2005); El Hos Engineering and Transport Co. v. American Independent Oil Co., 289 F.2d 346, 351-52 (2d Cir. 1961).

Where a party challenges a contract containing an arbitration clause as "void," a court, not an arbitrator, is tasked with determining the validity of a contract. Where a party contends a contract containing an arbitration clause is "voidable," the dispute is determined by an arbitrator rather than a court. See Denney, 412 F.3d at 68 ("we distinguish[] contracts that [are] "void" [...] from those that [are] merely "voidable" [....] A party alleging that a contract is void may be entitled to a trial prior to arbitration, whereas 'a party merely alleg[ing] that a contract is voidable,' who does not further allege that the arbitration clause itself is voidable, will be compelled to arbitrate the dispute.") (internal citations omitted); accord Three Valleys, 925 F.2d at 1139-41 (noting distinctions between contracts that are challenged as "void" and "voidable").

This distinction is crucial because Amiga's defense to Claimant's claims involves more than just fraud in the inducement, a voidable defense; it also involves fraud in the execution of the agreement, as well as Claimant's failure to satisfy a vital and condition precedent, either of which are sufficient to void the contingent agreement. Three Valleys, 925 F.2d at 1140-41 ("[A] party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision.") (Emphasis in original); Underwriters Reinsurance Co., 2003 U.S.

Dist. LEXIS 24814, at *13 ("The existence of a valid agreement to arbitrate is a condition precedent to enforcement, and the lack of such agreement is a valid ground on which a party may refuse to arbitrate."); see also Adams, 2005 U.S. App. LEXIS 29016, *18 (explaining that there is "no reason why a contract that does not exist due to failure of a condition precedent to formation is any less 'void' than any other contract that never comes into existence."); Denney, 412 F.3d at 67 (where a party claims that the underlying agreement is void (i.e., never took effect), such party is entitled to a judicial determination of the issue). As set forth below, Amiga's claim that Claimant did not satisfy the $1 million condition precedent is a claim that the Contingent Agreement is void. That being so, the Court must decide the merits of this claim before arbitration can proceed.

2. Amiga's Challenge that Claimant's Failure to Satisfy the Condition Precedent is a Claim that the Underlying Contingent Agreement is Void

Amiga is contending in the federal court action that the Contingent Agreement required Claimant to satisfy a condition precedent — secure $1,000,000 in funding for the operations of Amiga. Amiga's claim — that Claimant failed to comply with this crucial condition precedent to enforcement of the underlying agreement — is a defense that the agreement containing the arbitration clause is "void." Consequently, as the question of whether the underlying agreement is "void" is one for the Court (see Point I.A.I, supra), the district court must first rule on Amiga's claim that the Contingent Agreement is void before this matter can proceed.

The Second Circuit has issued two opinions that are directly on point. That is, where a party claims that an underlying agreement containing an arbitration clause is void because of another party's failure to satisfy a condition precedent to enforcement of the agreement, the Court "has a duty to determine" whether the agreement is in fact void before arbitration can proceed. See Adams v. Suozzi, ___ F.3d ___, No. 04 Civ. 6017, 2005 U.S. App. LEXIS 29016, *15 (2d Cir. Dec. 30, 2005) (emphasis added) (attached hereto at Exhibit A); El Hos Engineering

01/25/2006  22:46    5104500954                    GISTICS                        PAGE  12

and Transport Co. v. American Independent Oil Co., 289 F.2d 346 (2d Cir. 1961). Research has disclosed no Ninth Circuit or California opinions that arrive at a contrary conclusion.

In Adams, the County of Nassau ("the County") and the Nassau County Sheriff Officers Association ("the Union") entered into an agreement ("the LPA") detailing the ability of the County to institute a "lag payroll" during calendar year 2000. 2005 U.S. App. LEXIS 29016, *4. A "lag payroll," if implemented, would allow the County to defer ten days of pay of each Union member over the course of ten bi-weekly pay periods. The deferred pay would be returned when the union member separated from service with the County. Id.

The LPA contained several references to arbitration. Paragraph 2 required that any dispute concerning implementation of the lag payroll practice be submitted to arbitration. Id. at **4-5. Paragraph 4 gave the arbitrator jurisdiction to determine a remedy if the payroll practice affected pension rights. Id. at *5. Paragraph 7, the broadest arbitration clause in the LPA, provided that a "breach of the terms of [the LPA] be a grievance under [the applicable] collective bargaining agreement." Id. The LPA, however, "contained no provision that 'clearly and unmistakably' assigned the question of arbitrability to the arbitrator in the first instance." Id. at *15.

Although a Union representative signed the LPA, the agreement provided that it "shall be inoperative" unless the following two conditions were satisfied: (1) Union members ratified the LPA within 45 days; and (2) the Union and the County executed a "Memorandum of Agreement for the terms and conditions of an initial ... Collective Bargaining Agreement" ("CBA Memorandum"). Id. at *5.

The parties executed the CBA Memorandum in August 2001. Two years later, the County notified the Union that it intended to implement the terms of the LPA in September 2003. In response, the Union filed a lawsuit seeking, among other relief, to enjoin the County from implementing the lag payroll practice because the LPA was void on account of the fact that

Case 1:05-cv-08986-DAB    Document 11-3    Filed 01/31/2006    Page 6 of 6