the conditions precedent to enforcement of that agreement were never satisfied. The County moved to stay the litigation and compel arbitration pursuant to the FAA on the ground that the LPA required arbitration of the dispute. Id. at **6-7.

The district court denied the County's motion, holding "the parties never agreed to arbitrate because the contract embodying the arbitration provisions never became effective." Id. at *7. In particular, the Court noted that LPA contemplated instituting a "lag payroll" during calendar year 2000, yet the condition precedent requiring the parties to execute CBA Memorandum did not occur until August 2001. That being so, the Court concluded that this condition precedent had not been met because the lag payroll was to be implemented in 2000, thus requiring the parties to satisfy the condition precedent by the end of that year. Adams v. Suozzi, 340 F.Supp.2d 279, 283-284 (E.D.N.Y. 2004).

The Second Circuit affirmed. In so doing, the Court held that a claim that a party failed to satisfy a condition precedent in an agreement containing an arbitration provision is a claim that the contract is "void" and, hence, is a question for the Court to decide before the parties can be compelled to arbitration. 2005 U.S. App. LEXIS 29016, **16-20. The Court also rejected the County's challenge that because the LPA did not specifically state that the parties had to execute the CBA Memorandum in 2000, the condition precedent had been satisfied. The Court concluded that such an interpretation "would defeat the [LPA's] purpose," as the LPA complemented implementing the program in 2000, not 2003. Id. at **20-23.

As in Adams, Amiga executed an agreement with an arbitration clause that does not confer the power to decide issues of arbitrability upon an arbitrator. Further, and as was also the case in Adams, Amiga contends—in response to an application under the FAA to compel arbitration—that the underlying agreement never went into effect due to Claimant's failure to satisfy a condition precedent. Under such circumstances, Adams makes clear that the Court must decide the threshold issue of whether the agreement is void before arbitration can proceed.

Dockets.Justia.com

The Second Circuit's decision in El Hos Engineering and Transport Co., supra, also compels the conclusion that JAMS is not empowered to proceed with this arbitration. In El Hos, American Independent Oil Company ("Amnioil") entered into a contract with El Hos under which Amnioil would sell El Hos transportation equipment and then lease the equipment back from El Hos. The agreement contained an arbitration clause providing for the arbitration of "any disagreement between the parties ... as to the effectuation of th[e] agreement...." Id. at 348. Additionally, the agreement conditioned Amnioil's acceptance on El Hos' performance of certain conditions precedent respecting guarantees covering the purchase price, performance bonds and insurance protection. Id. Specifically, the agreement included a clause providing that the agreement was

> subject to [El Hos'] compliance with the conditions of this agreement as to guarantees or endorsements by third parties in favor of the [Amnioil] covering the unpaid installments on purchase price, performance bonds and insurance coverage, etc., not later than fourteen (14) days from the date of the acceptance by [Amnioil]. [Id.]

A dispute arose between the parties as to whether El Hos complied with the contingent obligations pursuant to the terms of the contract. El Hos subsequently sought an order compelling Amnioil to arbitrate the dispute. Id. at 348.

The Court rejected El Hos' attempt to compel arbitration, holding that the entire agreement, including the arbitration clause, was expressly conditioned upon El Hos complying with the contingent obligations. Id. at 349. The Court dismissed any notion that Amnioil sought to bring "sham litigation" simply to avoid arbitration, noting that a complete reading of the contract disclosed that Amnioil sought only to protect itself from being bound by the agreement until El Hos met the conditions. Id. The Court reasoned:

> Amnioil made it clear that the enjoyment by a bidder for the contract of the contractual fruits and duties was conditioned on the bidder's prior performance of the prior acts required of that successful bidder. Every clause including the arbitration clause was expressly so conditioned.

\*\*\*

> [T]he parties did not agree to arbitrate any disagreements as to performance by El Hoss of the threshold acts it was required to perform. We hold that adjudication of those disagreements is the responsibility of the court; and our next inquiry is directed to discovering whether El Hos did in fact perform the acts which, if performed, would give it the right to obtain a court order directing arbitration of all disputes arising from disagreements 'as to the effectuation of \* \* \* or performance \* \* \* of the agreement.' [Id. at 350.]

In reaching its conclusion, the Court found "no reason in fact or in law for a frustration of the parties' clearly demonstrated intent." Id. at 349. "[C]onsidering the size of the transaction it [was] patently understandable [to the Court] that Amnioil would choose to condition its obligations under the contract, including its obligation to arbitrate, upon the prior performance by [El Hos] of basic financial guarantees." Id.

As in El Hos, Amiga and Claimant did not agree to arbitrate any disputes respecting Claimant's contingent obligations. Every clause, including the arbitration clause, was expressly conditioned upon Claimant complying with the contingent obligations. Indeed, the provision in the Contingent Agreement is clear: "[T]his agreement in its entirety is contingent on [the Company] securing a minimum of $1,000,000 in funding for the operation of the Company." (See Claimant's Demand for Arbitration) (emphasis added)).

Accordingly, as Amiga contends Claimant did not satisfy a condition precedent to the agreement containing the arbitration clause – a claim that the Contingent Agreement is void – the Court must fist decide this issue before arbitration can proceed.

**B.   Claimant's Attempted Reliance on the Federal Arbitration Act Further Supports Staying the Arbitration**

As earlier noted in the Preliminary Statement, Claimant has invoked the FAA in the federal action by seeking to compel arbitration pursuant to Section 4 of the FAA. As Section 4 compels the Court (and not an arbitrator) to first rule on the issue of whether the underlying

agreement is void <u>before</u> compelling arbitration, Claimant cannot now be heard to claim that this arbitration should proceed prior to any ruling on his application by the district court.

Under Section 4 of the FAA, parties can be compelled to arbitrate <u>only</u> after the court is "satisfied that the making of the agreement for arbitration ... is not at issue." <u>Underwriters Reinsurance Co.</u>, 2003 U.S. Dist. LEXIS 24814, *24. When a party challenges the validity of the underlying contract, Section 4 "directs that the 'court shall proceed summarily to ... trial' of the issue." 9 U.S.C. §4; <u>U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping</u>, 241 F.3d 135, 145 (2d Cir. 2001). Claimant concedes as much by urging the district court to decide the arbitrability issue and compel the parties to arbitration pursuant to Section 4. Thus, any contention now by Claimant that the district court should not first decide the arbitrability issue under the FAA is contrary to his position in the federal action and thus should be rejected.

C.  **Judicial/Arbitral Efficiency and Economy Warrant Staying Arbitration**

Not only should JAMS stay this proceeding for the above reasons, but also because the interests of judicial/arbitral economy and efficiency warrant doing so. If this arbitration proceeds before the district court's ruling, Amiga will be required to incur considerable expenses, including transporting witnesses (including numerous third parties) back and forth across the country for an arbitration the district court may rule is improper.[4] If, on the other hand, the arbitration is stayed pending the district court's decision, the arbitration will only be delayed briefly.

Indeed, the relevant material witnesses (except for Claimant) work and/or reside in New York or a state other than California. It would be extraordinarily burdensome, inconvenient, expensive and potentially needless for non-parties and a significant number of high-level Amiga officers to travel to California to participate in a lengthy arbitration that the district court may

---

[4] Mr. Kouri's federal court declaration identifies company employees and third parties from multiple states that have relevant knowledge of the underlying facts.

shortly find improper. Put another way, arbitrating this action in California would seriously impede daily company operations by removing critical executives from their responsibilities – potentially for naught. The slight convenience of one witness (Claimant), must not trump the heavy burden placed on all other witnesses – including non-party witnesses – by proceeding with the arbitration prior to the district court's ruling.

Additionally, Claimant is by no means indigent and can readily bear whatever perceived "burdens" that could arguably result from a brief delay of the arbitration. Indeed, Amiga compensated Claimant at an annualized rate of more than $300,000. Thus, any claimed "burden" on Claimant would strain credulity if the action were postponed pending the district court's ruling.

Considering Claimant voluntarily terminated his relationship with Amiga less than one year ago, he cannot seriously contend that he will be prejudiced by waiting for the district court to rule on the parties' pending motions. Accordingly, JAMS should stay the arbitration pending the district court's ruling to better serve the interests of judicial/arbitral economy and efficiency.

### POINT II

**EVEN IF JAMS COULD DECIDE THE ARBITRABILITY ISSUE (AND IT CANNOT), ARBITRATION IS NONETHELESS IMPROPER BECAUSE CLAIMANT NEVER SATISFIED THE $1 MILLION CONDITION PRECEDENT**

As set forth in Point I, supra, the question of whether the Contingent Agreement is void – and, hence, arbitration inappropriate – is for the Court. Arbitration is equally improper because Claimant did not satisfy the $1 million condition precedent. Consequently, the Contingent Agreement upon which Claimant bases this arbitration never took effect, thus divesting JAMS of any jurisdiction. Adams, 2005 U.S. App. LEXIS 29016, *18 ("when there is a 'condition precedent to the formation or existence of the contract itself . . . no contract arises 'unless and until the condition occurs.'") (internal citation omitted).

Here, there is no question that the Contingent Agreement required Claimant to satisfy the condition precedent. The Contingent Agreement makes clear that the "agreement in its entirety [was] contingent on [the Company] securing a minimum of $1,000,000 in funding for the operation of the Company." As set forth in Mr. Kouri's federal court declaration, before the Company committed to a contractual obligation to provide Claimant with extremely generous benefits, the parties agreed that Claimant, through his claimed direct connections and efforts, would secure a minimum of $1,000,000 in funding for the operations of Amiga. (Kouri Decl., ¶¶ 30-31). A plain and common sense reading of the Contingent Agreement supports this conclusion.

Under the Contingent Agreement, Claimant's base salary would be $300,000 per year and Claimant would be "entitled ... to participate in any stock option, profit sharing, retirement, group insurance, hospitalization, medical, dental, health and accident, disability or similar plan or program of [Amiga]...." Further, the Contingent Agreement provided Claimant with "full medical coverage for himself, his spouse, and dependents younger than eighteen years of age," and permitted Claimant to terminate the Contingent Agreement at any time, without any penalty. (Kouri Decl., ¶27).

Claimant would have Your Honor believe that the $1 million contingency clause did not apply to him. Considering the strategic business partnership between the parties, however, such a reading of the Contingent Agreement is contrary to common logic. Indeed, it strains credulity for Claimant to maintain that Amiga would agree to award him significant amounts of stock and compensate him with a substantial salary and other generous benefits without requiring him to first demonstrate his ability to generate investments for Amiga. Put simply, Claimant, whose counsel drafted the Contingent Agreement, suggests he would be entitled to the fruits of the contract without having to perform the labor of securing the $1 million in funding — a responsibility consistent with the entire aim of the strategic business partnership (i.e., that

Claimant would grow the Company's business and raise capital). (Kouri Decl., ¶¶ 17, 18, 19, 31). Under such circumstances, no reasonable fact-finder could conclude that the $1 million contingency did not apply to Claimant. See World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 184 (2d Cir. 2003) ("the cardinal principle for the construction and interpretation of [...] all contracts -- is that the intentions of the parties should control [...] and absurd results should be avoided."); Gaillard v. Hancock, No. 95 Civ. 56252, 1997 U.S.App. LEXIS, *8 (9th Cir. Apr. 14, 1997) (rejecting party's interpretation of contract as outcome would lead to an "absurd result"). In short, Claimant's interpretation "would defeat the [Contingent Agreement's] purpose." Adams, 2005 U.S. App. LEXIS 29016, *21.

Accordingly, even if JAMS was empowered to first decide whether the Contingent Agreement is void (and it is not), JAMS should dismiss this matter because the undisputed facts demonstrate that Claimant did not satisfy the $1 million condition precedent, thus rendering the underlying agreement (and any claimed "agreement" to arbitrate) void.

## CONCLUSION

For the foregoing reasons, Amiga respectfully request that JAMS stay this arbitration pending resolution of the New York action. In the event JAMS addresses the question of whether the Contingent Agreement is void (and it should not), JAMS should dismiss this arbitration because the Contingent Agreement between Amiga and Claimant is void.

REED SMITH LLP
Attorneys for Respondents

By: _____
ROBERT H. BERNSTEIN
A Member of the Firm

Dated: January 20, 2006

01/25/2006  22:46    5104500954              GISTICS                    PAGE  20

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused to be served on Claimant true copies of the within Memorandum of Law on Behalf of Respondents to Stay or, Alternatively, Dismiss Arbitration, with annexed Exhibit, via facsimile and United Parcel Service to Bruce W. Blakely, Esq., Law Offices of Flaxman & Blakely, Shelterpoint Business Center, 591 Redwood Highway, Suite 2275, Mill Valley, CA 94941.

Dated: January 20, 2006

                                                                      _Stephen D. Bird_ (signature)
                                                                          Stephen D. Bird